# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 13 |
| ANN M. KALESNIK, | ) ) | Case No. 15-30597-EDK |
| Debtor | ) ) ) | |
| ANN M. KALESNIK, | ) ) ) | Adversary Proceeding No. 16-3027 |
| Plaintiff | ) ) | |
| v. | ) ) | |
| HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE and OCWEN LOAN SERVICING, LLC, | ) ) ) ) ) | |
| Defendants | ) ) | |

## MEMORANDUM OF DECISION

Before the Court is a motion to dismiss (the "Motion to Dismiss") the adversary complaint filed by Ann M. Kalesnik, the debtor in the underlying Chapter 13 bankruptcy case (the "Debtor"), against HSBC Bank USA, National Association and Ocwen Loan Servicing, LLC ("HSBC", "Ocwen," together, the "Defendants"). The adversary complaint raises a variety of claims against the Defendants, including breach of contract, tort, and consumer protection claims, as well as attempting to use § 544 of the United States Bankruptcy Code[1] to avoid the mortgage held by

---

[1] *See* 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code" or the "Code"). All references to statutory sections are to the Bankruptcy Code unless otherwise specified.

1

HSBC. For the reasons set forth below, the Court will dismiss all counts of the complaint save one.

I.     <u>FACTS AND TRAVEL OF THE CASE</u>

In July 2006, the Debtor executed a promissory note in the principal amount of $178.500, and granted a mortgage to the lender on her home located at 55 Alfred Circle in Agawam, Massachusetts (the "Property") to secure repayment (the "Mortgage"). HSBC now holds the Mortgage by assignment. Although the Mortgage was properly recorded, it suffers from a flaw – it lacks a description of the property subject to the Mortgage.[2]

Subsequently, the Debtor defaulted on her Mortgage loan payments. In May 2012, the Debtor submitted an application for approval of a deed in lieu of foreclosure ("Deed in Lieu"). According to the Debtor, the Defendants accepted the Debtor's request, telling the Debtor that a Deed in Lieu would be accepted so long as she vacated the Property. The Debtor did so, and left the Property in late October 2012.

The Debtor alleges that, after vacating the Property, the Defendants reneged on their agreement and refused to accept a Deed in Lieu. After a series of phone calls with Ocwen in late 2012 and early 2013, the Debtor consulted with counsel. On May 1, 2013, Debtor's counsel sent a letter to Ocwen contending that Ocwen was beginning to violate the Massachusetts's consumer protection statute, Mass. Gen. Laws ch. 93A ("Chapter 93A"). Additionally, between January and September 2013, the Debtor asserts, the Defendants changed the locks to the Property, prohibiting her access to the Property. Although the Debtor remains the owner of the Property, she does not currently reside there.

---

[2] The Mortgage itself does not contain a description of the Property; it references a "legal description attached," but no description is actually attached to the recorded version of the Mortgage.

2

On June 30, 2015, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code, and voluntarily converted the case to one under Chapter 13 in December 2015. Approximately a year into the Chapter 13 case, on December 15, 2016, the Debtor commenced this adversary proceeding against the Defendants by filing a seven count complaint (the "Complaint"). In Count I of the Complaint, she seeks avoidance of the Mortgage pursuant to § 544 (on grounds that the lack of a property description renders the Mortgage voidable by a judicial lien creditor or bona fide purchaser), and seeks recovery of the Mortgage for the benefit of the bankruptcy estate pursuant to § 550.

In addition to the § 544 claim, the Debtor asserts several counts based on the Defendants' alleged failure to accept a Deed in Lieu and their changing the locks on the Property. Those actions, the Debtor maintains, give rise to claims for Breach of Contract (Count II), Wrongful Eviction/Conversion (Count III), Breach of Quiet Enjoyment (Count IV), Violations of Chapter 93A (Count V), Misrepresentation (Count VI), and Intentional Infliction of Emotional Distress (Count VII).

The Defendants have moved to dismiss each count of the Complaint, to which the Debtor has objected. After a hearing on the Motion to Dismiss, the Court took the matter under advisement.

II. POSITIONS OF THE PARTIES

   A. *Count I: Avoidance of the Mortgage under § 544*

The Defendants maintain that Count I of the Complaint must be dismissed, as the Debtor lacks standing to prosecute an action under § 544. Pointing to the plain language of the Bankruptcy Code, which does not explicitly authorize a Chapter 13 debtor to exercise the powers of a trustee under § 544, and relying on majority case law from Massachusetts as well as other jurisdictions,

the Defendants urge this Court to follow the majority rule and hold that a Chapter 13 debtor lacks standing to exercise avoidance powers under the Bankruptcy Code.

The Debtor, in turn, points to contrary case law, primarily *Houston v. Eiler (In re Cohen)*, 305 B.R. 886 (B.A.P. 9th Cir. 2004), where courts have ruled that a Chapter 13 debtor *can* exercise avoidance powers under Chapter 5 of the Code. Drawing from the reasoning in those cases, the Debtor says a holistic reading of the Code lends itself to the conclusion that a Chapter 13 debtor has the power to avoid a mortgage under § 544. The Debtor also points to § 1306 and § 541, arguing that her bankruptcy estate includes § 544 recoveries and she should thus logically be able to prosecute such actions. The Debtor also highlights the potential conflict raised by the requirements of § 1325 of the Code, which requires a Chapter 13 debtor to provide a dividend to unsecured creditors in an amount equal to their expected distribution in a Chapter 7 case. The Debtor says it makes little sense to require her to account for the value of the avoidance action in formulating a Chapter 13 plan, while prohibiting her from prosecuting the avoidance action. And finally, the Debtor bolsters her arguments with reference to legislative history and an assertion that, as a general policy, ambiguities in the Code should be resolved in favor of the Debtor.

  B.  *Count II: Breach of Contract*

The Defendants argue that the claim for Breach of Contract must be dismissed for several reasons. First, assuming the existence of a valid contract between the parties, the Defendants contend that it is the *Debtor* who failed to fulfill her end of the bargain, because she never actually deeded the Property to the Defendants. Second, the Defendants note, there has been no foreclosure sale of the Property in contravention of the purported agreement to forebear from foreclosing by accepting a Deed in Lieu. Third, the Defendants say that the Debtor has not pled any specific damages as a result of the alleged breach. And finally, the Defendants argue that, because the Debtor has not produced a writing memorializing the alleged agreement, the claim is barred by the

4

Massachusetts statute of frauds.

The Debtor did not respond to any of the Defendants' arguments regarding the breach of contract claim.

  C.  *Counts III, V, VI, and VII: Tort and Consumer Protection Claims*

The Defendants contend that the Debtor's tort and Chapter 93A claims are each barred by the applicable statute of limitations. In response, the Debtor asserts that the statute of limitations did not begin to run until March 2014, when she discovered the injuries caused by the Defendants' actions. The Defendants counter with reference to the Chapter 93A letter attached to the Complaint, dated May 1, 2013, arguing that the Debtor was aware of her potential claims by at least that date. And, going further, they maintain that the alleged injury occurred even earlier, in late 2012, when the Debtor vacated the Property, at which point the statute of limitations began to run.

  D.  *Count IV: Breach of Quiet Enjoyment*

The Defendants move to dismiss the Debtor's Breach of Quiet Enjoyment claim, because, they argue, the covenant of quiet enjoyment applies to the landlord-tenant relationship and interference with a tenancy and so does not apply here, as the Debtor owns the Property. In response, the Debtor says that the relevant statute, Mass. Gen. Laws ch. 186, § 14 applies also to lenders. Accordingly, the Debtor says, the Defendants are liable for Breach of Quiet Enjoyment, because, as the Debtor sees it, the Defendants essentially resorted to "self-help" and evicted her from the Property.

III. DISCUSSION

  A.  *Motion to Dismiss Standard*

In resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made

5

applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012, the Court must "take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993). Therefore, this Court takes the allegations contained in the Complaint as true and draws all reasonable inferences in favor of the Debtor to determine whether, as to each count, the Debtor has alleged "sufficient facts to show that [s]he has a plausible entitlement to relief." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, the Court is not required to accept "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Importantly, neither must the Court accept as true allegations made in briefs that are contradicted by the Complaint. *See Peter Pan Bus Lines, Inc. v. Greyhound Lines, Inc.*, 189 F. Supp. 3d 217, 224 (D. Mass. 2016).

    B.    *Standing of a Chapter 13 Debtor to Exercise Avoidance Powers*

Chapter 5 of the Bankruptcy Code gives a bankruptcy trustee important powers to avoid and recover transfers made by the debtor (the "avoidance powers"), including the avoidance power granted by § 544.[3] In Chapter 11 and Chapter 12 cases, the Bankruptcy Code specifically provides that a Chapter 11 or Chapter 12 debtor in possession has the rights of a trustee (with certain exceptions not relevant here), including a trustee's Chapter 5 avoidance powers. *See* 11 U.S.C. §§ 1107(a), 1203. In contrast, there is no analogous Code provision that generally grants Chapter 13 debtors the powers granted to a trustee under the Bankruptcy Code, and there is no Code provision that explicitly grants Chapter 13 debtors the authority to exercise avoidance powers

---

[3] Section 544 provides that a "*trustee* shall have, as of the commencement of the case . . . the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by" certain other entities, such as a bona fide purchaser or a judicial lien creditor. 11 U.S.C. § 544 (emphasis supplied).

6

under Chapter 5.

Instead, a Chapter 13 debtor is only explicitly granted a limited set of trustee powers in § 1303 (providing that a Chapter 13 debtor has, "exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l) . . . .") and § 522(h) (permitting a debtor to exercise avoidance powers under certain limited circumstances). There is a split in the case law as to whether a Chapter 13 debtor may exercise avoidance powers outside the § 522(h) context, but, "[a]s numerous courts have noted, 'there is a significant and growing number of courts that have held, except to enhance the debtor's exemptions under section 522, the chapter 5 avoiding powers of a trustee are not available to a chapter 13 debtor.'" *Kirschke v. Butler Bank (In re Kirschke)*, 2009 WL 4344434, *4 (Bankr. D. Mass. Nov. 24, 2009), *aff'd* 2010 WL 2510087 (D. Mass. June 16, 2010) (quoting *Cardillo v. Andover Bank (In re Cardillo)*, 169 B.R. 8, 11 (Bankr. D.N.H. 1994)).[4]

Relying on this explicit, but limited, grant of trustee powers to a Chapter 13 debtor, a majority of courts, including all the courts to address the issue in this district, have held that Chapter 13 debtors have no standing to exercise a trustee's avoidance powers under Chapter 5 of the Bankruptcy Code. *See, e.g., Stangel v. United States (In re Stangel)*, 219 F.3d 498 (5th Cir.

---

[4] While a Chapter 13 debtor has some limited avoidance rights pursuant to § 522(h), that section is not applicable here for reasons identical to those outlined in *In re Kirschke*:

> Section 522(h) permits a debtor to avoid a transfer "to the extent that the debtor could have exempted such property under subsection (g)(1)" of 522 if the trustee could have brought, but did not bring, the action. The limitation set forth in § 522(g)(1) prevents the Debtors from avoiding the claimed transfer as that subsection requires that either the transfer was (i) involuntary and not concealed by the debtors; or (ii) could have been avoided under § 522(f)(1)(B). The former requirement is inapplicable as the alleged transfer [here, the granting of the Mortgage] was voluntary. . . . The later requirement is inapplicable as the transfer was not in the personalty of a type described in § 522(f)(1)(B).

2009 WL 4344434 at *5; *see also Hansen v. Green Tree Serv'ing, LLC (In re Hansen)*, 332 B.R. 8, 13 (B.A.P. 10th Cir. 2005); *LaBarge v. Benda (In re Merrifield)*, 214 B.R. 362, 365 (B.A.P. 8th Cir. 1997); *Miller v. Brotherhood Credit Union (In re Miller)*, 251 B.R. 770, 771 (Bankr. D. Mass. 2000).

2000); *In re Hansen*, 332 B.R. 8; *In re Merrifield*, 214 B.R. 362; *Currie v. Wells Fargo Bank, N.A. (In re Currie)*, 2013 WL 1305805 (Bankr. D. Mass. March 28, 2013); *In re Kirschke*, 2009 WL 4344434; *In re Miller*, 251 B.R. 770.[5]

Those courts that have ruled differently – i.e., have held that a Chapter 13 debtor *can* exercise avoidance powers outside the § 522(h) context – have focused primarily on non-textual factors, such as the primarily administrative role of the Chapter 13 trustee, legislative history, and equitable concerns. *See, e.g.*, *Houston v. Eiler (In re Cohen)*, 305 B.R. 886, 894 (B.A.P. 9th Cir. 2004) (holding that Chapter 13 debtors have standing to exercise avoidance powers, and noting that "[c]ourts that favor chapter 13 debtor standing focus on the economic realities of chapter 13, including the limited role of chapter 13 trustees, and emphasize anomalies that would result if viable avoiding actions were allowed to linger . . . these courts regard the statute as ambiguous and emphasize legislative history statements."). However, such rationales "ignore the plain language of the statute. 'If Congress intended to grant avoidance powers to a Chapter 13 debtor, it could have explicitly done so.'" *In re Miller*, 251 B.R. at 772-73 (quoting *Pilgreen v. Brown & Williamson Fed. Credit Union (In re Pilgreen)*, 161 B.R. 552, 553 (Bankr. M.D. Ga. 1989))

---

[5] Contrary to the Debtor's assertion that the cases in this district "cannot be interpreted as uniform," Debtor's Opposition at 11, ECF No. 16, the reported Massachusetts cases are indeed uniform in holding that a Chapter 13 debtor lacks standing to exercise Chapter 5 avoidance powers. The Debtor argues that Judge Hillman "revisited" his earlier conclusion that Chapter 13 debtors cannot exercise avoidance powers in *In re Dessources*, 430 B.R. 330 (Bankr. D. Mass. 2010). But this is not so. Judge Hillman clearly distinguished the *Dessources* case, in which he concluded that the debtors had standing to raise defects in a mortgage in opposition to a motion for relief from the automatic stay, from the avoidance powers cases, specifically noting that "[t]his is not the situation that was before me in the cited decisions, where a debtor sought to exercise a trustee's avoidance powers." *In re Dessources*, 430 B.R. at 333. Similarly, the Debtor erroneously concludes that Judge Feeney did not definitively rule on the standing issue in *In re Currie*. On the contrary, in the *Currie* case, Judge Feeney specifically noted that Massachusetts courts have ruled that Chapter 13 debtors lack standing to prosecute avoidance actions and dismissed the Chapter 13 debtor's § 544 count on standing grounds. Because the parties had not addressed the applicability of § 522(h), however, see *infra* fn. 4, Judge Feeney's dismissal was without prejudice to the Debtor filing an amended complaint "plausibly demonstrating the applicability of *11 U.S.C. § 522(h)*." *In re Currie*, 2013 WL 1305805 at *11 (emphasis supplied).

(additional citations omitted); *see also In re Hansen*, 332 B.R. at 14-15.

The Supreme Court has repeatedly emphasized that interpretation of the Bankruptcy Code "begin[s] with the understanding that Congress 'says in a statute what it means and means in a statute what it says there.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 6 (2000) (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)). In the *Hartford Underwriters* case, the Court was tasked with the interpretation of § 506(c) of the Code, which by its terms grants certain rights only to a "trustee." The Court held that a creditor could not pursue recovery under that section, rejecting the creditor's theory that the express reference to the trustee did not preclude other parties in interest from seeking relief under § 506(c). Pointedly, the Court noted that the creditor's theory "that the expression of one thing indicates the inclusion of others unless exclusion is made explicit – is contrary to common sense and common usage." *Hartford Underwriters*, 530 U.S. at 8; *see also In re Stangel*, 219 F.3d at 501.

The text of §§ 1306 and 541 do not alter this conclusion. The Debtor rightly notes that the Chapter 13 estate incorporates property of the estate enumerated in § 541 and provides that a debtor remains in possession of estate property. *See* 11 U.S.C. § 1306. Section 541(a)(3), in turn, includes recoveries on avoidance claims as property of the bankruptcy estate. The Debtor would have the Court to thus conclude that "logic dictates that the [Chapter 13] debtor is charged with pursuing such assets." Debtor's Opposition at 3, ECF No. 16. But the Debtor's argument fails to account for the full language of § 541(a)(3), which includes, as property of the bankruptcy estate, "[a]ny interest in property that *the trustee* recovers" pursuant to the avoidance powers. 11 U.S.C. § 541(a)(3) (emphasis supplied). It does not confer on the Chapter 13 debtor any independent right to exercise those powers.

Finally, the Debtor's argument that it is simply unfair to require a Chapter 13 debtor to account for a potential avoidance recovery in determining the confirmability of a Chapter 13 plan

9

under § 1325 while preventing the Chapter 13 debtor from pursuing avoidance actions essentially "boils down to a public policy argument which the Supreme Court ultimately concluded in *Hartford Underwriters* was a matter best left for Congress. . . . '[W]e do not sit to assess the relative merits of different approaches to various bankruptcy problems. It suffices that the natural reading of the text produces the result we announce. Achieving a better policy outcome – if what petitioner urges is that – is a task for Congress, not the courts.'" *In re Hansen*, 332 B.R. at 15-16 (quoting *Hartford Underwriters*, 530 U.S. at 13-14).

The avoidance powers in Chapter 5 of the Bankruptcy Code, including those granted by § 544, extend by their plain language only to trustees. Chapter 11 and Chapter 12 debtors are explicitly granted those powers under a general grant of authority to exercise trustee powers. Chapter 13 debtors are not. For that reason, this Court adopts the majority view and holds that Chapter 13 debtors do not have standing to exercise a trustee's avoidance powers outside the narrow confines of § 522(h). Accordingly, Count I of the Debtor's Complaint will be dismissed.

    C.    *Breach of Contract and the Statute of Frauds*

The Debtor's breach of contract claim is easily disposed of, because the Court need not reach the question of whether the elements required for a breach of contract were met. "Under a deed in lieu, the borrower conveys a fee-simple title to the mortgagor in exchange for a forgiveness of the debt secured by the mortgage." *Kennedy v. JP Morgan Chase Nat'l Corp.*, 2011 WL 1576569, *3 (D. Mass. April 26, 2011). The Massachusetts Supreme Judicial Court has considered the offer and acceptance of a deed in lieu to be a sale of property. *See J&W Wall Sys., Inc. v. Shawmut First Bank & Trust Co.*, 594 N.E.2d 859, 860-61 (Mass. 1992). As such, a purported contract obligating the Defendants to accept a Deed in Lieu is a contract subject to the Massachusetts statute of frauds, which provides that a "contract for the sale of lands" is not enforceable "[u]nless the promise, contract or agreement upon which such action is brought, or

10

some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized." Mass. Gen. Laws ch. 259, § 1. The Debtor has not attached a copy of or alleged the existence of such a writing. Accordingly, the Debtor's Breach of Contract claim (Count II) will be dismissed.[6]

D.  *Statutes of Limitations – Tort and Consumer Protection Claims*

**1.  The Tort Claims**

The Debtor's tort claims – Wrongful Eviction/Conversion (Count III), Misrepresentation (Count VI), and Intentional Infliction of Emotional Distress (Count VII) – are subject to a three-year statute of limitations. *See* Mass. Gen. Laws ch. 260, § 2A ("Except as otherwise provided, actions of tort . . . shall be commenced only within three years next after the cause of action accrues.").

The Debtor says that the applicable statutes of limitations should be tolled based on the "discovery rule" and principles of equitable estoppel. In Massachusetts, a statute of limitations is tolled "until a plaintiff knows or reasonably should know that he has been harmed by the defendant's conduct." *Levin v. Berley*, 728 F.2d 551, 553 (1st Cir. 1984); *see also Cambridge Plating Co. v. Napco, Inc.*, 991 F.2d 21, 25 (1st Cir. 1993) (The statute of limitations begins to run "when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury.") (quoting *Bowen v. Eli Lilly & Co., Inc.*, 557 N.E.2d 739, 741 (Mass. 1990)).

In her opposition to the Motion to Dismiss, the Debtor claims that she "did not discover the deception of the defendants until early 2014," Debtor's Opposition, ECF No. 18, and argues that the statute of limitations did not begin to run until that time. However, it is clear from the

---

[6] The Court notes, however, that this may not bar the Debtor from presenting evidence of an oral agreement in connection with her other claims. *See LaBarre v. Shepard*, 84 F.3d 496 (1st Cir. 1996).

11

Complaint that the Debtor was aware, at least as of May 2013, "that something had gone seriously awry." *Levin*, 728 F.2d at 553. By that time, the Debtor had employed counsel on her behalf, who sent a letter dated May 1, 2013 acknowledging the Debtor's belief that the Defendants were "beginning to engage in unfair and deceptive conduct." The Complaint further acknowledges that, the Defendants entered the Property and changed the locks between January 2013 and September 2013. Complaint at 5 ¶ 29. Accordingly, the statute of limitations expired in May 2016 or, *at the very latest*, in September 2016. This suit was not commenced until December 15, 2016.

But the Debtor, citing to *O'Blenes v. Zoning Bd. of Appeals of Lynn*, 492 N.E. 2d 354, 356 (Mass. 1986), further argues that the Defendants are equitably estopped from raising a statute of limitations defense, because the Debtor has demonstrated that the "Defendants' conduct in this case attributed to any claimed delay" in her discovery of the alleged harm. Debtor's Opposition at 6, ECF No. 18. In fact, however, the Complaint contains no factual allegations indicating that, subsequent to May 1, 2013, the Defendants engaged in any conduct intended to induce the Debtor not to bring suit, as required for the application of equitable estoppel principles. *See New England Power Co. v. Riley Stoker Corp.*, 477 N.E.2d 1054, 1059 (Mass. 1985) (in order to "escape the consequence of . . . lack of diligence" in bringing suit, the plaintiff must prove that defendant "wrongfully lulled [the plaintiff] into the delay"). Estoppel requires "proof that the defendants made representations they knew or should have known would induce the plaintiffs to put off bringing a suit and that the plaintiffs did in fact delay in reliance on the representations." *White v. Peabody Constr. Co.*, 434 N.E. 2d 1015, 1023 (Mass. 1982). The Debtor has made no such allegations here.

Accordingly, the Court must dismiss Counts III, VI, and VII as barred by the statute of limitations.

2. **The Chapter 93A Claim**

Under Massachusetts law, claims brought pursuant to Chapter 93A are subject to a four-year statute of limitations. *See* Mass. Gen. Laws. ch. 260, § 5A. Just as with tort claims, "this limitations period is subject to tolling until the plaintiff knew or should have known of the alleged injury." *Lambert v. Fleet Nat'l Bank*, 865 N.E.2d 1091, 1097 (Mass. 2007). While it is clear that the Debtor knew or should have known of her alleged injuries by May 1, 2013, it is not clear that the Debtor knew that the Defendants would not accept a Deed in Lieu of foreclosure as of December 15, 2012 (four years prior to the filing of the Complaint). The Debtor says in the Complaint that she had several telephone discussions with the Defendants during the months subsequent to her vacating the Property, which conversations "ended in the late winter/early spring of 2013." Accordingly, it is at least plausible that the Debtor was not aware of the Defendants' intention to refuse acceptance of the Deed in Lieu by December 15, 2012 and the Court will deny the Defendants' request to dismiss Count V of the Complaint.[7]

E. *Applicability of the Breach of Quiet Enjoyment Statute to the Lender-Mortgagor Relationship*

The Debtor asserts that the Defendants' actions in changing the locks on the Property and "wrongfully evict[ing]" the Debtor "constitute breaches of quiet enjoyment." Complaint at 6 ¶¶ 40, 41. However, as noted by the Defendants in the Motion to Dismiss, "the covenant of quiet enjoyment applies to interference with a tenancy." *Enfeld v. Rockland Trust Co.*, 24 N.E.3d 1060 (Mass. App. Ct. 2015); *see also Doe v. New Bedford Hous. Auth.*, 630 N.E.2d 248, 255 (Mass. 1994) ("The covenant of quiet enjoyment protects a *tenant's* right to freedom from serious

---

[7] The Court notes, however, that the Debtor must still prove entitlement to the damages requested in the Complaint – namely, entitlement, "pursuant to Mass Gen. Laws Ch. 93A, Section 11, to recover from the Defendants the damages . . . of at least $500,000 . . . plus interest, costs, reasonable attorneys' fees, and a trebling of the damages awarded." Complaint at 7 ¶ 48.

interference with his *tenancy* – acts or omissions that impair the character and value of the *leased premises*.") (emphasis supplied). And, contrary to the Debtor's assertion that the relevant statute, Mass. Gen. Laws. ch. 186, § 14, constitutes a mandate directed at both landlords and lenders, *see* Debtor's Opposition at 7, ECF No. 18, the statute by its terms applies only to "[a]ny *lessor* or *landlord*." The Defendants are neither lessors nor landlords, and the statute simply does not apply here. Accordingly, the Court will dismiss the Breach of Quiet Enjoyment claim (Count IV).

IV. <u>CONCLUSION</u>

For all the foregoing reasons, the Court will GRANT IN PART and DENY IN PART the Defendants' Motion to Dismiss. The Debtor does not have standing to prosecute her claim for avoidance of the Mortgage, the breach of contract claim is barred by the statute of frauds, the tort claims are all untimely-filed, and the breach of quiet enjoyment claim cannot be brought against the Defendants, as there is no landlord-tenant relationship; accordingly, Counts I-IV and VI-VII will all be dismissed. The Defendants have not demonstrated that the Chapter 93A claim must be dismissed as untimely-filed, and as to that claim (Count V) the Motion to Dismiss will be denied. An order will issue forthwith.

DATED: July 11, 2017

By the Court,

_Elizabeth D. Katz_
Elizabeth D. Katz
United States Bankruptcy Judge

14